UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TIMOTHY L. S., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )   Case No. 22-CV-191-CDL |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of the | ) |
| Social Security Administration, | ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

Plaintiff seeks judicial review under 42 U.S.C. § 405(g) of a decision of the Commissioner of the Social Security Administration (Commissioner) denying Social Security disability benefits. The parties have consented to proceed before a Magistrate Judge in accordance with 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is **affirmed**.

**I.    Legal Standards**

    **A.    Standard of Review**

The Social Security Act (Act) provides disability insurance benefits to qualifying individuals who have a physical or mental disability. *See* 42 U.S.C. § 423. The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *See id*. § 423(d)(1)(A).

Judicial review of the Commissioner's disability determination "is limited to determining whether the Commissioner applied the correct legal standards and whether the agency's factual findings are supported by substantial evidence." *Noreja v. Soc. Sec. Comm'r*, 952 F.3d 1172, 1177 (10th Cir. 2020) (quoting *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1175 (10th Cir. 2014)). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1178 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Noreja*, 952 F.3d at 1178 (quoting *Grogan*, 399 F.3d at 1261-62).

So long as supported by substantial evidence, the agency's factual findings are "conclusive." *Biestek*, 139 S. Ct. at 1152 (quoting 42 U.S.C. § 405(g)). Thus, the court may not reweigh the evidence or substitute its judgment for that of the agency. *Noreja*, 952 F.3d at 1178.

**B.     Five-Step Agency Process**

The Commissioner uses a five-step, sequential process to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At step one, the Commissioner determines whether the claimant is engaged in substantial gainful activity. At step two, the Commissioner determines whether the claimant has an impairment or a combination of impairments that is severe. At step three, the Commissioner determines whether the claimant's severe impairment or combination of impairments is equivalent to one that is listed in the applicable regulation, which the Commissioner "acknowledges are

so severe as to preclude substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (internal quotation and citation omitted); *see* 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpt. P, App'x 1 (Listings). At step four, the claimant must show that her impairment or combination of impairments prevents her from performing her previous work. The claimant bears the burden on steps one through four. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007). If the claimant satisfies this burden, thus establishing a prima facie case of disability, the burden of proof shifts to the Commissioner to show at step five that the claimant retains the capacity to perform other work available in the national economy, in light of the claimant's age, education, and work experience. 20 C.F.R. § 1520(a)(4)(v).

## II.   Background and Procedural History

The plaintiff filed for disability insurance benefits under Title II of the Social Security Act (Act) on December 17, 2019. (R. 82). He alleged a disability onset date of July 30, 2019. *Id.* He alleged disability from a combination of physical and mental impairments, including "moderate to severe" depression, obsessive compulsive disorder, general anxiety disorder, acute panic disorder, agoraphobia, paranoia, auditory and visual hallucinations, "black-out panic attacks," degenerative rheumatoid arthritis in the right hip and leg, and tendinitis in the left shoulder. (R. 82-83). The plaintiff was 43 years old on his alleged onset date. (R. 82). He did not complete high school, due to his panic attacks. (R. 28). Before his alleged disability, plaintiff performed various tasks, including accounting and quality control work, and as a licensed electrician apprentice. (R. 52-53).

The plaintiff's application was denied on initial review and on reconsideration. (R. 15). Subsequently, an Administrative Law Judge (ALJ) held a hearing via telephone on September 28, 2021. (R. 15, 31). The hearing included testimony by plaintiff and a Vocational Expert (VE). (R. 45-79). On October 20, 2021, the ALJ issued an unfavorable decision denying disability benefits. (R. 15-40). As a result, the ALJ's decision became the final decision of the Commissioner. (R. 1). Plaintiff then timely appealed to the district court. Accordingly, the Court has jurisdiction to review the ALJ's October 20, 2021 decision under 42 U.S.C. § 405(g).

### III.   The ALJ's Decision

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of July 30, 2019. (R. 17). At step two, the ALJ found that plaintiff suffers from the following severe impairments: generalized anxiety disorder, major depressive disorder, panic disorder, agoraphobia, obesity, left shoulder degenerative joint disease, and degenerative disc disease. *Id*. The ALJ further found that the plaintiff has non-severe impairments of bilateral carpal tunnel syndrome, hypertension, hyperlipidemia, restless leg syndrome, and left biceps tendinitis. (R. 18).

At step three, the ALJ determined that plaintiff's impairments do not meet or medically equal the criteria for any Listing under 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 18-26). Applying the required psychiatric review technique, the ALJ found that plaintiff has a moderate impairment in understanding, remembering, or applying information; a moderate limitation in interacting with others; a moderate limitation in concentrating, persisting, or maintaining pace; and no limitation in adapting or managing

4

oneself. As such, the ALJ found that the plaintiff's impairments do not satisfy the "paragraph B" or "paragraph C" criteria. (R. 26; *see* 20 C.F.R. § 404 Subpt. P App'x 1).

The ALJ found that plaintiff has the residual functional capacity (RFC) to:

> perform light work as defined in 20 CFR 404.1567(b) except the [plaintiff] is able to lift or carry, push or pull twenty pounds occasionally and ten pounds frequently. The [plaintiff] can sit for six hours out of an eight-hour day and stand or walk a combined total of six hours out of an eight-hour day. The [plaintiff] can occasionally climb ramps, stairs, ladders, scaffolds, and ropes. The [plaintiff] can occasionally stoop, kneel, crouch, and crawl. The [plaintiff] has no balance limitations. The [plaintiff] can understand, remember, and carry out simple repetitive tasks with routine supervision. The [plaintiff] can tolerate only superficial (brief and cursory) contact with coworkers and supervisors. Public contact should not be required for successful completion of the job duties. The [plaintiff] can adapt to a work situation.

(R. 26).

The ALJ's decision discussed the plaintiff's testimony and other statements, as well as medical and other evidence in the record supporting the RFC determination. The plaintiff lives with his mother. He is paid through the state to take care of her after she sustained injuries in a car accident, and previously, he also cared for his father before his death in 2020. (R. 28). The plaintiff "gives his mom medication, does laundry, cleans the house, cooks, cleans her when she soils herself, helps her in/out of the shower, checks her blood sugar, administers insulin 4x a day, grocery shops (online and someone else picks it up), and washes dishes." (R. 28). However, the plaintiff "alleged his conditions affected his ability to lift, squat, bend, stand, walk, hear, stair climb, see, remember, complete tasks, concentrate, understand, use his hands, and get along with others." *Id*. The plaintiff also indicated that he wore glasses and used a cane and a brace/splint. *Id*. Additionally, "[h]e

5

alleged his medications caused fatigue, insomnia, confusion, randomly falling asleep, and excessive urination." *Id*. The plaintiff testified that he only drives two or three times a month, and only short distances, because he experiences panic attacks when he drives. *Id*. He stays in his room most of the day and listens to audiobooks. (R. 28-29).

At step four, the ALJ concluded that Plaintiff is unable to perform his past relevant work as actually or generally performed. (R. 37-38). At step five, citing the hearing testimony of the VE, the ALJ found that there are other jobs existing in significant numbers in the national economy that plaintiff can perform, including:

> ***Cleaner-housekeeper***, light, unskilled work, Specific Vocational Preparation (SVP) Level 2, Dictionary of Occupational Titles (DOT) # 323.687-014, with approximately 342,000 such jobs in the national economy;
>
> ***Inspector and hand packager***, light, unskilled work, SVP 2, DOT # 559.687-074, with approximately 75,000 such jobs in the national economy; and
>
> ***Routing clerk***, light, unskilled work, SVP 2, DOT # 222.687-022, with approximately 50,000 such jobs within the national economy.

(R. 39). Thus, the ALJ concluded at step five that plaintiff is not disabled. (R. 39-40).

**IV.   Discussion**

The plaintiff argues that the ALJ did not properly assess limitations arising from the plaintiff's bilateral carpal tunnel syndrome (CTS), left-side lateral epicondylitis, and chronic pain/chronic pain disorder. The plaintiff also contends that the ALJ erred at step five, because the reasoning level of the jobs identified by the VE exceeds the plaintiff's RFC. The Commissioner argues that substantial evidence supports the ALJ's findings, and that the ALJ followed the correct legal standards.

6

### A. Physical Impairments

Plaintiff contends that the ALJ erred at step two by failing to classify his CTS, lateral epicondylitis, and chronic pain syndrome as severe. At step two of the evaluative sequence, the ALJ must determine whether plaintiff suffers from severe impairments. That is all that is required of the ALJ at step two. *Oldham v. Astrue*, 509 F.3d 1254, 1256 (10th Cir. 2007). Once an ALJ finds that a claimant has at least one severe impairment, a failure to designate others as "severe" at step two does not constitute reversible error. *See id.*; *Hill v. Astrue*, 289 F. App'x 289, at **2 (10th Cir. 2008) (emphasis in original) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for the purposes of step two.").[1] This is because, under the regulations, the agency at later steps "consider[s] the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." *Langley v. Barnhart*, 373 F.3d 1116, 1123-24 (10th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(e), 416.945(e).

Here, the ALJ found that the plaintiff has severe physical and mental impairments at step two. (R. 17-18). The ALJ also identified the plaintiff's bilateral wrist CTS, hypertension, hyperlipidemia, restless leg syndrome, and left biceps tendinitis as non-severe impairments. (R. 18). As such, the ALJ's failure to identify any other medically determinable impairment, if any, is not reversible error; nor is the ALJ's finding that the plaintiff's CTS is non-severe. *See Oldham*, 509 F.3d at 1256. Instead, these arguments are

---

[1] Under 10th Cir. R. 32.1(A), "[u]npublished decisions are not precedential, but may be cited for their persuasive value."

more properly directed at the ALJ's RFC determination and findings concerning the effects of the plaintiff's impairments on his ability to work.

The ALJ considered evidence relating to the plaintiff's CTS, lateral epicondylitis in the left arm, and chronic pain. The ALJ's decision noted that the plaintiff was diagnosed with bilateral CTS in February 2017, with carpal-tunnel release surgery recommended on the left side. (R. 18, 29). An examination by Jeffrey Morris, D.O. on February 22, 2017 found positive Phalen and Tinel signs bilaterally, as well as "definite dysesthesia and widened 2-point discrimination at the left hand at about 8mm and about 6mm on the right" in the median nerve distribution. (R. 340; *see* R. 29). However, Dr. Morris noted that "there was no atrophy, and the ulnar nerve distribution was normal." (R. 29).

Two years later, in April 2019, the plaintiff received steroid injections for CTS after complaining of pain and numbness in the left hand. (*See* R. 18, 29). Then, in October 2020, an examination found "bilateral numbness/tingling made worse with compression/ percussion of the wrists, and positive Phalen/Tinel signs." (R. 18, 32). The plaintiff again received injections bilaterally for his CTS. *Id*.

The ALJ discussed a July 2020 consultative examination performed by Erin Showalter, D.O., noting that the plaintiff had arrived to the appointment wearing a brace on his left wrist. (R. 18, 30, 34, 36). Dr. Showalter noted the plaintiff had pain in both wrists. (R. 30). However, the plaintiff had 5/5 grip strength bilaterally, and he "was able to effectively oppose the thumb to the fingertips, manipulate small objects, and effectively grasp tools (pain)." (R. 34 (citing R. 357-363); *see also* R. 18, 30, 36). Dr. Showalter assessed the plaintiff with bilateral CTS and chronic pain, as well as other mental and

8

physical impairments. (*See* R. 31). As noted in the ALJ's decision, Dr. Showalter found "no obvious vascular insufficiency . . . [or] sensory or focal defects." (R. 34; *see also* R. 30-31, 36). The plaintiff had a normal gait without the use of an assistive device, and he "otherwise had full and painless range of motion of his back, neck, hip flexion, hip abduction, knees, ankles, shoulders, and elbows." (R. 34; see also R. 30, 36).

Regarding the plaintiff's lateral epicondylitis, the ALJ noted that the plaintiff reported left arm pain, neck pain, shoulder pain, and elbow pain in December 2019. (R. 30). The plaintiff was prescribed Percocet for nerve pain and was given a steroid injection. *Id*. In January 2020, he received another injection but continued to have "constant" left arm pain. *Id*. However, during his July 2020 CE with Dr. Showalter, the plaintiff had equal grip strength of 5/5 bilaterally, no muscle atrophy or contracture, and full range of motion of his upper extremities. (*Id*.; *see* R. 362). In August 2020, the plaintiff stated that injections for his elbow "helped a lot and he wanted them again." (R. 18, 31). He obtained injections again in October 2020 and was also advised to use heat, stretching, and exercises to treat his lateral epicondylitis. (R. 32).

The ALJ's decision noted mixed evidence in the record regarding the effectiveness of injection treatments for the plaintiff's CTS symptoms. In his hearing testimony, the plaintiff said that injections had been ineffective. (R. 29). However, the plaintiff reported in December 2020 that steroid injections had helped. (R. 35). During a virtual examination on April 8, 2021, the plaintiff reported he had "some good relief" after steroid injections the previous year for his left shoulder and elbow pain and bilateral CTS. (R. 33, 411).

The ALJ concluded that, although the plaintiff complained of pain and limitations arising from impairments to his spine and upper extremities, the evidence did not support a need for additional limitations in the RFC determination. The plaintiff was "treated conservatively for chronic pain of multiple areas. The [plaintiff] treated his physical pain with steroid injections, Flexeril, Tramadol, Percocet, ibuprofen, and tizanidine. He did not require emergency treatment or surgical repair." (R. 34).

The ALJ's RFC determination is supported by the findings of two state agency psychological consultants, Carla Werner, M.D. (dated July 28, 2020) and William H. Oehlert, M.D. (dated November 12, 2020). Both reviewing consultants found the plaintiff has the RFC to perform light work with occasional climbing, stooping, kneeling, crouching, and crawling, and unlimited balancing. (R. 38). The ALJ found these opinions persuasive. *Id*. The ALJ further explained how he considered these opinions in the context of the record as a whole. The ALJ noted that the state agency physicians' findings

> are supported by their review of the evidence citing bilateral carpal tunnel syndrome of the wrists, lumbar arthrosis, obesity, left limp, normal gait, pain with left hip motion, normal extremities range of motion, pain in the bilateral wrists, controlled hypertension, and mental health problems[.]
>
> In addition, they are consistent with the other evidence. The claimant treated his physical pain with steroid injections, Flexeril, Tramadol, Percocet, ibuprofen, and tizanidine. He did not require emergency treatment or surgical repair.
>
> A July 2020 consultative examination found him wearing a brace on his left wrist. There was a left limp present. He was unable to move his left hip for adduction, extension, or rotation due to pain. He had pain with wrist and thumb motion. Straight leg raising was positive bilaterally in sitting and lying positions. He had pain with cervical range of motion.

> However, there was no obvious vascular insufficiency. His pulses were equal throughout. There were no sensory or focal defects appreciated. There was no muscle atrophy. Grip strength was equal bilaterally and rated at 5/5. There was no muscle contracture. He moved about the room with a normal gait and normal speed, safety, and stability. He did not require the use of assistive devices to ambulate. He otherwise had full and painless range of motion of his back, neck, hip flexion, hip abduction, knees, ankles, shoulders, and elbows. He was able to effectively oppose the thumb to the fingertips, manipulate small objects, and effectively grasp tools (pain). Toe and heel walking were normal bilaterally. He did not have pain with lumbosacral range of motion.
>
> In December 2020, he endorsed having six steroid injections that helped. In April 2021, he endorsed some good relief after steroid injections in the fall (left shoulder, left elbow, and bilateral carpal tunnel) (3-4 months).

(R. 34-35) (citations to record material omitted).

The plaintiff argues that the ALJ downplayed evidence that the plaintiff was referred for further imaging in connection with his CTS diagnosis, and that he would need surgery for his CTS. (Pl. Br., Doc. 13 at 4-5). The entire case record must inform the RFC determination. *See* 20 C.F.R. §§ 404.1545(a)(1). However, the ALJ is not required to discuss every piece of evidence in the record; instead, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).

Here, the ALJ's decision acknowledged that the plaintiff had been recommended for left-side carpal tunnel release surgery. (R. 18, 29). The ALJ also found that on August 20, 2020, the plaintiff was referred for nerve conduction testing in connection with CTS. (R. 31). However, the ALJ also weighed evidence that the plaintiff reported "good relief

11

after steroid injections." (R. 33; see also R. 34-36).[2] Furthermore, the prior administrative findings of Dr. Werner and Dr. Oehlert included no manipulation or reaching limitations in their respective RFC assessments. (*See* R. 89, 109).[3]

The plaintiff points to no authority indicating that an ALJ must find an impairment severe if the condition requires surgery. Rather, the record contains evidence both more favorable and less favorable to a finding of disability. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016). The weighing of such evidence is the province of the ALJ, not the Court. *Id*.; *Haga v. Astrue,* 482 F.3d 1205, 1208 (10th Cir. 2007) (noting that "the ALJ is entitled to resolve any conflicts in the record"); *see also Richardson v. Perales,* 402 U.S. 389, 399 (1971) ("We . . . are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.").

The plaintiff argues that the ALJ ignored evidence probative of his pain. However, a claimant's subjective complaints of pain or other symptoms, alone, cannot establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Rather, "[t]he burden to prove

---

[2] The plaintiff also suggests that the ALJ ignored evidence that the plaintiff was unable to afford the recommended testing and surgery. But the ALJ explicitly noted the plaintiff's testimony that he was saving money for the recommended tests. (R. 29; *see also* R. 33 (noting as of April 8, 2021, the plaintiff "was still waiting for additional carpal tunnel testing")). The ALJ further noted that, although physical therapy was recommended for the plaintiff's back pain, the plaintiff testified that he is unable to attend therapy due to his agoraphobia. (R. 29; *see also* R. 33 (May 10, 2021 note that "physical therapy was not an option due to anxiety"; *compare id*. (noting the plaintiff "was unable to do physical therapy [for his back] due to cost, transportation, and failure before"). As such, the ALJ's decision reflects that he took this evidence into account.

[3] Indeed, Dr. Werner specifically noted that the plaintiff's "[p]ain and obesity do not further limit" his ability to perform work tasks. (R. 90).

disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence [to show] the existence of the disability." *Branum v. Barnhart,* 385 F.3d 1268, 1271 (10th Cir. 2004).

Here, the plaintiff acknowledged that he "can lift a normal sack of groceries without pain" and can "move a 5-gallon jug of water over the door threshold, but then must roll [it] to the dispenser" due to back pain. (R. 29). He is able to cook full meals, do laundry, and help care for his mother. (R. 28-29). The plaintiff stated that he cannot work in an office, not because of any limitations in reaching or using his hands, but rather, due to his anxiety and his inability to drive due to his mental impairments. (R. 29). Moreover, no medical opinion in the record indicates that the plaintiff is more limited in reaching or manipulation.

Accordingly, substantial evidence supports the lack of reaching or manipulation restrictions in the ALJ's RFC determination. Even if the evidence could support a different finding, the Court cannot displace the agency's choice between two fairly conflicting views. *See Oldham,* 509 F.3d at 1257-58. Here, the ALJ reasonably concluded that the evidence justified certain limitations, but not to the full extent the plaintiff alleged. As such, reversal is not warranted based on the ALJ's physical RFC determination. *See Glenn v. Shalala,* 21 F.3d 983, 988 (10th Cir. 1994) (holding that court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion).

The plaintiff also argues that the ALJ erred in failing to include manipulation or reaching requirements in the hypothetical on which he based his step five findings. However, the hypothetical need only reflect the limitations found to exist by the ALJ. *See*

13

*Evans v. Chater*, 55 F.3d 530, 532 (10th Cir.1995) (noting "the established rule that such inquiries must include all (and only) those impairments borne out by the evidentiary record"). Accordingly, this argument is rejected.

    B.       VE's Testimony/Mental RFC

The plaintiff contests the ALJ's findings at step five, contending that the alternative occupations the ALJ identified exceed the mental limitations in the ALJ's RFC determination. The DOT identifies a general educational development (GED) reasoning level between 1 (lowest) and 6 (highest) for each listed job. Reasoning development level addresses the degree of analytical problem-solving required by a job. *DOT*, App'x C, Section III (U.S. Dept. of Labor, 4th ed. 1991).

The plaintiff argues that the RFC limitation to "simple repetitive tasks with routine supervision" is inconsistent with the jobs designated as GED Reasoning Level 2. (R. 26). Specifically, he contends that a requirement to "carry out detailed but uninvolved written instructions," as required for Level 2 reasoning, exceeds the RFC limitation to simple, routine tasks, and therefore created a conflict in the VE's testimony that the ALJ improperly failed to resolve. *See Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999) (the ALJ must "investigate and elicit a reasonable explanation for any conflict between the [DOT] and expert testimony"); *see also* SSR 00-04p, 2000 WL 1898704.

However, Tenth Circuit guidance indicates that a limitation to simple, routine work does not necessarily preclude work requiring Level 2 reasoning. *See Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005) (holding that Level 2 reasoning "appears more consistent with" an RFC for "simple and routine work tasks"); *see also Stokes v. Astrue*,

274 F. App'x 675, 684 (10th Cir. 2008) (unpublished) (rejecting argument that limitation to "simple, repetitive and routine work" is inconsistent with Level 2 reasoning); *Ray v. Comm'r of Soc. Sec.*, No. CIV-18-629-SM, 2019 WL 1474007, at *5 (W.D. Okla. Apr. 3, 2019) (unpublished) (finding that Level 2 reasoning does not, "on its face," conflict with an RFC limitation to simple work-related instructions and tasks; collecting cases); *cf. Paulek v. Colvin*, 662 F. App'x 588, 594 (10th Cir. 2016) (unpublished) (citing Eighth Circuit holding that "a limitation to simple instructions is inconsistent with both level-two and level-three reasoning," but noting that Tenth Circuit has not ruled "whether a limitation to simple and routine work tasks is analogous to a limitation to carrying out simple instructions"). Accordingly, there was no apparent conflict between the DOT and the VE's testimony identifying jobs with up to GED Level 2 reasoning, and the ALJ was not required to investigate further.

The plaintiff suggests that the RFC for simple, repetitive tasks did not adequately account for the ALJ's finding that the plaintiff has a moderate limitation in concentration, persistence, or pace. The Tenth Circuit has held that limiting a claimant to unskilled work and to jobs with an SVP of two adequately accounts for a moderate limitation in concentration, persistence, and pace. *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (internal citation omitted) ("There may be cases in which an ALJ's limitation to 'unskilled' work does not adequately address a claimant's mental limitations. But in this case, we conclude that limiting the plaintiff to an SVP of only one or two, adequately took into account his moderate limitations in concentration, persistence, and pace."). Here, the

plaintiff does not dispute that each of the jobs identified at step five is classified as unskilled, with an SVP of two. As such, the plaintiff has pointed to no reversible error.

### V.   Conclusion

For the reasons set forth above, the Court finds that the ALJ's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, the decision of the Commissioner finding Plaintiff not disabled is **affirmed**.

**SO ORDERED** this 14th day of August, 2023.

Christine D. Little
United States Magistrate Judge